UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES B. SUMPTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-0347-TWP-DKL |
| | ) | |
| METROPOLITAIN LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

*Entry on Plaintiff's Motion to Compel Discovery* [doc. 89]

This cause comes before the Court on *Plaintiff's Motion to Compel Discovery* [doc. 89], Defendant's response, Plaintiff's reply, and Plaintiff's supplemental reply. The Honorable Tanya Walton Pratt has referred the motion to compel to the undersigned for ruling. Having considered the motion, the Court finds that it should be denied.

*Background*

Plaintiff brings this action for disability benefits under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* He also asserts claims for breaches of fiduciary duties relating to the alleged failure to provide plan documents and failure to follow ERISA claim procedures.

The *Fourth Amended Complaint*, which is the operative complaint, alleges that Sumpter was hired by General Motors ("GM") on February 5, 1991, and that the division for which he worked was made a part of Delphi Automotive Systems ("Delphi") on

January 1, 1999.  [*Compl.*, doc. 75 ¶¶ 12-13.]  On December 8, 2000, Sumpter became disabled.  [*Id.* ¶¶ 3-5, 21.]  Sumpter was a participant in the Delphi Life and Disability Benefits Program Plan.  [*Id.* ¶ 17.]  He purchased the Supplemental Extended Disability Benefit ("SEDB"), which had included a feature that permitted a participant to elect an early payout of his basic life insurance.  [*Id.* ¶ 5.]  Sumpter admits that his disability benefits are determined based on the commencement date of disability.  [*Id.* ¶ 23.]

The 2000 Plan states that it is the plan in effect for Delphi employees that were actively at work on or after January 1, 2000.  [2000 Plan, doc. 95-6 at 152-53.]  It appears that Sumpter was actively at work until December 8, 2000.  [*See Compl.* ¶ 4 (alleging that Plaintiff became disabled on December 8, 2000 and was retired on long-term disability on July 1, 2002).]  The 2000 Plan provides:

> The Program Administrator expressly reserves the exclusive right to construe, interpret and apply the terms of this program.  In carrying out its responsibilities under the Program, the Carrier [MetLife] also shall have discretionary authority to interpret the terms of the Program and to determine eligibility for and entitlement to Program benefits in accordance with the terms of the Program.  Any interpretation or determination made by … the Carrier [MetLife], pursuant to such discretionary authority, shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

[2000 Plan, doc. 95-6 at 168-169.]  The 2000 Plan states that: "Delphi … is the sponsoring employer and administrator of the employee benefit plans described in this booklet which are governed by ERISA."  [*Id.* at 133.] It also provides that "[t]he benefits to which an employee is entitled are determined solely by the provisions of the applicable benefit plan or program."  [*Id.* at 136.]

Sumpter requested an early payout of his basic life insurance benefit under the GM 1992 SPD.  [*See Compl.*, doc. 75, ¶¶ 5-6, 24, 31, 40.]  MetLife denied his claim.  [*Id.* ¶ 32.]  Its decision stated that the Delphi disability benefits program provided for a payout of basic life insurance benefits if, among other things, the employee last worked between January 1, 1974 and December 31, 1993.  [*Mot. Summ. J.*, *Ex. A*, doc. 95-2 at 71.]  MetLife explained that Sumpter did not meet that criteria because he last worked on December 7, 2000, and therefore was ineligible for a payout of his basic life insurance benefit.  [*Id.*]  Sumpter appealed, and on review, MetLife upheld its decision.  [*Compl.*, doc. 75 ¶ 33-34.]  MetLife explained, "The provision that allowed a payout of Basic Life Insurance for total and permanent disability was eliminated effective January 1, 1994" and the provision "of a payout of Basic Life Insurance … was not a provision of the Delphi Life and Disability Benefits Program for Salaried Employees when [Sumpter] transitioned to Delphi on January 1, 1999."  [*Mot. Summ. J.*, *Ex. A*, doc. 95-2 at 5-6; *see also Compl.*, doc. 75 ¶ 41.]

Plaintiff moves to compel Defendant to respond to Plaintiff's First Set of Interrogatories and produce all documents requested in a subpoena issued on November 10, 2015.  Defendant responded to the interrogatories and subpoena on December 18, 2015, but asserted objections to many of the discovery requests.

*Discussion*

Under the Federal Rules of Civil Procedure, effective December 1, 2015, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make the existence of a fact of consequence

to the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Factors bearing on proportionality include "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may seek an order compelling discovery when another party fails to respond to discovery requests. Fed. R. Civ. P. 37(a). The party objecting to the discovery request bears the burden of showing that the request is improper. *Deere v. Am. Water Works. Co.*, 306 F.R.D. 208, 215 (S.D. Ind. 2015).

A district court has broad discretion in deciding discovery matters. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). The Seventh Circuit has expressed a "general reluctance to grant extensive discovery in ERISA cases." *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 (7th Cir. 2012) (noting that "discovery would be costly and produce very little relevant information when the terms of the plan documents are unambiguous").

Plaintiff moves for an order compelling Defendant to produce all documents requested in the subpoena and to respond to unanswered interrogatories. He argues that, with the exception of Interrogatory No. 5, the discovery responses are inadequate and improper to the extent they assert that the requests are vague, overly broad, and unduly burdensome. He also argues that the objections are improper because his claim challenging the denial of benefits (Cause One) is subject to de novo review. In addition,

Plaintiff maintains that with respect to his claims for breach of fiduciary duty (Causes Two, Three and Four), discovery is not limited to the administrative record.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority, then denial of benefits is reviewed under the "arbitrary and capricious" standard. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). When review is deferential—under the arbitrary and capricious standard—"review is limited to the administrative record." *Krolnik v. Prudential Ins. Co.*, 570 F.3d 841, 843 (7th Cir. 2009). Here, the benefit plan at issue, the 2000 Plan gives MetLife discretionary authority to interpret the terms of the plan and determine eligibility for benefits.

In *Semien v. Life Ins. Co.,* 436 F.3d 805, 815 (7th Cir. 2006), the Seventh Circuit held that "limited discovery is appropriate" in ERISA benefits cases in "exceptional" circumstances—where the claimant can "identify a specific conflict of interest or instance of misconduct" and "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect"). Plaintiff has not identified a specific conflict or instance of misconduct or made a prima facie showing of good cause to believe that limited discovery will reveal a procedural defect so as to justify discovery beyond the administrative record. Because the 2000 Plan gives MetLife discretionary authority, and Plaintiff has not shown that this is an exceptional case in which limited discovery

5

would be appropriate, both judicial review and discovery are limited to the administrative record.

While it is true that an SPD controls if there is a direct conflict between the underlying plan documents and SPD, *see, e.g.*, *Mers v. Marriott Int'l Grp. Acc. Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998), this only applies to the SPD *in effect* at the time the plaintiff becomes entitled to benefits, *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir. 2006).  A plaintiff cannot base an ERISA claim for benefits on an SPD that has been superseded by another document. *See id.*  And that is what Sumpter attempts to do here: base his claim on the GM 1992 SPD which was superseded by the 2000 Plan documents.  He alleges that he was not provided with any SPD other than the GM 1992 SPD and therefore that SPD is the governing document if it conflicts with a subsequent plan.  But that is incorrect.  Generally, defects in ERISA notification and disclosure requirements do not give rise to a substantive remedy.  *See, e.g.*, *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir. 1996) ("Technical violations of ERISA's notification provisions … ordinarily do not provide a basis for monetary relief."); *see also Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) (citing cases).  Monetary relief may be available in "exceptional cases" where "the employer … acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their [sic] employees by inducing their reliance on a faulty plan summary." *Panaras*, 74 F.3d at 789.  But Plaintiff has not shown that this is such an "exceptional case."

Sumpter argues that his benefit denial should be determined based on the 1993 GM Life and Disability Program.  He admits this Plan gives the Carrier (MetLife) the

6

discretionary authority to interpret the terms of the program and to determine eligibility for program benefits. However, he argues that the 1993 Plan and subsequent SPDs conflict. The Court disagrees. The GM 1992 SPD provides that "[w]ith the exception of life insurance which is insured, if you are not satisfied with the decision of the Plan administrator, you may appeal within sixty (60) days to the Employe (sic) Benefits Plan Committee (EBPC) which has been delegated authority to construe, interpret, and administer General Motors' employe (sic) benefit plans." [*Appendix*, doc. 89-1 at 5.] The GM 1996 SPD and Delphi 2001 SPD contain similar language. [*See id.*, at 7, 9.] Sumpter argues that none of the SPDs contains explicit language granting discretionary authority to the *insurance carrier* to construe and interpret the Plan. Thus, he asserts, there is a conflict between the Plan and the SPDs.

The undersigned disagrees. While the SPDs state that the Employee Benefits Committee has been delegated authority to construe, interpret, and administer the employee benefit plans, Plaintiff has pointed to no language in the SPDs that addresses what authority (discretionary or otherwise) is granted the Carrier. In addition, the language Sumpter cites from the SPDs concerns the Committee's authority over *appeals* from the Carrier's decision, rather than the benefits decision. Where the GM 1992 SPD is silent as to the Carrier's authority and the 2000 Plan (or 1993 Plan) grant the Carrier discretionary authority, there is no direct conflict between the SPD and the Plan. *See Mers*, 144 F.3d at 1023-24 ("[A]n SPD's silence on an issue does not estop a plan from relying on the more detailed policy terms when no direct conflict exist.").

Plaintiff's Second, Third, and Fourth Causes of Action assert breaches of fiduciary duty against MetLife. A claim for breach of fiduciary duty under ERISA requires proof that: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach caused harm to the plaintiff. *Killian v. Concert Health Plan*, 742 F.3d 651, 658 (7th Cir. 2013). More specifically, the Second Cause of Action claims that MetLife failed to provide the summary of material modification and summary plan description; the Third Cause of Action alleges that MetLife failed to comply with ERISA claims procedure requirements, specifically 29 C.F.R. § 2560.503-1(i)(3), which allows for a maximum of 45 days to respond to a request for review of an adverse disability benefits decision; and the Fourth Cause of Action asserts that the plan required Sumpter to pay his treating physician to complete the disability section of a claim form in violation of § 2560.503-1(b)(3).

These claims appear doomed, and the discovery at issue is not proportional to the needs of the case. Plaintiff has failed to show that MetLife's alleged failure to provide plan documents or timely respond to his request for review caused him any harm. And it seems unlikely that the requested discovery would produce information relevant to the issues in this case. Furthermore, only the plan administrator can be held liable for failing to provide plan documents. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009); *see also Schorsch v. Reliance Std. Life Ins. Co.*, 693 F.3d 734, 742 (7th Cir. 2012) ("United Conveyor as the plan administrator had the responsibility of providing [plaintiff] with a summary plan description, and we will not impute its apparent and unfortunate failing to [the claims administrator]."). Delphi, not MetLife, is the plan

8

administrator. [*See, e.g., Mot. Amend Compl.*, doc. 88 at 1 (seeking leave to amend to correct the error in alleging that MetLife was the plan administrator instead of GM).] Therefore, MetLife cannot be held liable for the failure to provide plan documents, and any discovery relating to that issue is not likely to lead to relevant information. Moreover, 29 C.F.R. § 2560.503-1 provides the specific relief available if a plan fails to establish or follow claims procedures that are consistent with the regulation: "a claimant shall be deemed to have exhausted the administrative remedies available under the plan…." 29 C.F.R. § 2560.503-1(l); *see Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 614 (2013) (stating that the penalty for failing to meet the deadlines in the regulations "is immediate access to judicial review for the participant") (citing 29 C.F.R. § 2560.503-1(*l*)). Plaintiff has pursued his administrative remedies and sought judicial review. Discovery relating to alleged failures to follow claims procedures would be unlikely to uncover relevant information and would be disproportionate to the needs of this case.

*Conclusion*

For the foregoing reasons, *Plaintiff's Motion to Compel Discovery* [doc. 89] is **DENIED**.

ENTERED THIS DATE: 02/29/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

ECF Distribution to counsel of record

By U.S. Mail to James B. Sumpter, pro se, 21169 Westbay Circle, Noblesville, IN 46062