UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES B. SUMPTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00347-TWP-DKL |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross motions for summary judgment. On September 8, 2015, *pro se* Plaintiff, James Sumpter ("Mr. Sumpter"), filed his Fourth Amended Complaint, which is the operative complaint in this case. (Filing No. 75.) In the Complaint, Mr. Sumpter seeks disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA") against Defendant, Metropolitan Life Insurance Company's ("MetLife") for their failure to provide plan documents and failure to follow ERISA claim procedures. Mr. Sumpter seeks judicial review, equitable remedies and penalties based on allegations that MetLife violated fiduciary duties when Plan documents were not timely provided and claim procedures were not followed. On February 2, 2016, MetLife filed a Motion for Summary Judgment (Filing No. 95) and on March 11, 2016, Mr. Sumpter filed a Cross Motion for Summary Judgment (Filing No. 109). For the reasons stated below, the Court grants MetLife's Motion for Summary Judgment and denies Mr. Sumpter's Motion for Summary Judgment.

**I. BACKGROUND**

On February 5, 1991, Mr. Sumpter was hired as an Electrical Engineer for Delco Electronics, a division of General Motors ("GM"). (Filing No. 75 at 8.) Mr. Sumpter was

originally enrolled in an insurance plan covered by GM, and was made aware of his benefits determination by a summary plan description ("SPD") ("1992 GM Plan"). (Filing No. 110 at 12; Filing No. 111 at 13-15.) On January 1, 1999, Delco Electronics was spun off as a part of Delphi Automotive Systems ("Delphi"). (Filing No. 75 at 8.) Upon the spin off to Delphi, Mr. Sumpter became a participant in the 2000 Delphi Life and Disability Benefits Program Plan ("the 2000 Delphi Plan") and had, during the years prior to his disability, purchased the Supplemental Extended Disability Benefit from the plan. (Filing No. 75 at 8-9.)

Mr. Sumpter was told at various times that his current benefits plan was substantially the same as the 1992 GM Plan. (Filing No. 75 at 8; Filing No. 110 at 13; Filing No. 111-1 at 75-76, 98; Filing No. 111-2 at 7.) In contrast, MetLife asserts that enrollment documents from the 1994 plan year and a 1996 SPD indicated the elimination of the disability life insurance provision. (Filing No. 95-2 at 5-8; Filing No. 111-2 at 258-259.) Nevertheless, Mr. Sumpter says that he did not receive any materials indicating the change and asserts that the materials were not widely distributed. (Filing No. 110 at 15; Filing No. 111-2 at 260.) Instead, Mr. Sumpter contends that the first and only SPD he received from Delphi was in early 2002. (Filing No. 110 at 13.)

On December 8, 2000, Mr. Sumpter became disabled and stopped working. On July 1, 2002, he retired on permanent long-term disability. When Mr. Sumpter became disabled, he had worked as an Electrical Engineer for both GM and Delphi for 9 years and 10 months; and, by the time of his retirement, he had worked for GM and Delphi for 10 years and 9 months. (Filing No. 111 at 6; Filing No. 111-3 at 364.) In early 2002, more than a year after he became disabled, Mr. Sumpter reports that he received the first SPD from Delphi that detailed his determined benefits. (Filing No. 110 at 13.)

According to the 2000 Delphi Plan, "Delphi Automotive Systems Corporation is the sponsoring employer and administrator of the employee benefit plans described in this booklet which are governed by ERISA." (Filing No. 95-6 at 133.) Additionally, the 2000 Delphi Plan states that Delphi "reserves the right to amend, modify, suspend, increase, decrease or terminate any of its employee benefit plans or programs by action of its Board of Directors or other committee or individual expressly authorized by the Board to take such action. *Id*. at 136.

In contrast, MetLife is the 2000 Delphi Plan's *benefit* administrator, fiduciary, and insurance carrier. (Filing No. 75 at 9.) The 2000 Delphi Plan grants discretionary authority to MetLife, as the "Carrier", to interpret plan terms and determine eligibility for claimed benefits. (Filing No. 95-6 at 168-69.) Specifically, the 2000 Delphi Plan provides that "[a]ny interpretation or determination made by the Program Administrator or the Carrier, pursuant to such discretionary authority, shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious". *Id*.

On January 10, 2004, Mr. Sumpter submitted a formal request for the payout of his disability life insurance benefit. (Filing No. 111-2 at 19.) In doing so, Mr. Sumpter relied on the 1992 GM Plan, because that it was the only SPD issued to him prior to the onset of his disability. *Id*. On March 12, 2009, Mr. Sumpter resubmitted his request for the life insurance payout; and, on June 3, 2009, MetLife denied the request on the basis that the 2000 Delphi Plan did not contain the claimed benefit. *Id*. at 25-30.

On July 31, 2009, Mr. Sumpter appealed MetLife's denial of his request; and, on March 20, 2010, MetLife upheld its initial determination. (Filing No. 111 at 44-44.) In MetLife's final claim determination, it explained that the life benefit sought by Mr. Sumpter had been eliminated in the 1994 enrollment documents and the 1996 summary plan description. *Id*. On April 14, 2010,

Mr. Sumpter appealed the second denial to the Delphi Plan's Employee Benefit Plans Committee; however, on May 10, 2010, the Benefit Plans Committee refused to the review the prior adverse ruling on the grounds that the final decision rested with MetLife. (*Id*. at 37, 39-42.)

## II.  LEGAL STANDARD

Summary judgment is only appropriate by the terms of Federal Rule of Civil Procedure 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

A court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490

(7th Cir. 2007). Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

### III. DISCUSSION

#### A. Denial of Disability Life Insurance Benefit

Mr. Sumpter's primary allegation is that MetLife acted arbitrarily and capriciously when it denied his request for disability life insurance payments.

##### 1. *Res Judicata*

To begin, MetLife argues that Mr. Sumpter's claim for benefits is barred by *res judicata*. "The doctrine of claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits, finality trumps." *Czarniecki v. City of Chi.*, 633 F.3d 545, 548 (7th Cir. 2011). There are three elements for claim preclusion under federal law: (1) a final decision in the first suit; (2) a dispute arising from the same transaction (identified by its "operative facts"); and (3) the same litigants (directly or through privity of interest). *Id.*

In this regard, MetLife points to a 2013 bankruptcy decision, wherein the United States Bankruptcy Court for the Southern District of New York ordered Mr. Sumpter to dismiss with prejudice the claims he brought against Delphi. (*See* Filing No. 34-1.) In particular, MetLife points to language in the Bankruptcy Court's decision, wherein the Bankruptcy Court concluded that the claims asserted in the "Indiana case" against Delphi are "barred by res judicata and therefore enjoined". *Id.* at 4. Thereafter, the Southern District of Indiana affirmed the Bankruptcy Court's decision. (Filing No. 65-2.)

However, as Mr. Sumpter points out, MetLife was not a party to the Bankruptcy proceeding. Further, despite MetLife's largely undeveloped arguments regarding privity of

interest, the Bankruptcy Court judge noted that his order was not intended to affect Mr. Sumpter's claims against MetLife.  (*See* Filing No. 93-1 at 13) ("[n]one of these claims as they apply to MetLife will be enjoined, and the order should make that clear"); (Filing No. 93-1 at 6) (indicating that the Indiana District Court would have to resolve any later-filed *res judicata* challenges interpreting the court's order).  As such, the Court is not persuaded that *res judicata* bars Mr. Sumpter's claims against MetLife in this case.

### 2. Denial of Benefits

Nevertheless, when substantively addressing Mr. Sumpter's claim for benefits, the Court concludes that MetLife is entitled to summary judgment on the claim.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan gives the administrator or fiduciary discretionary authority, then denial of benefits is reviewed under the "arbitrary and capricious" standard.  *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011).

In this case, the 2000 Delphi Plan gives MetLife discretionary authority to interpret the terms of the plan and determine eligibility for benefits.  Specifically, the 2000 Delphi Plan states as follows,

> The Program Administrator expressly reserves the exclusive right to construe, interpret and apply the terms of this program.  In carrying out its responsibilities under the Program, the Carrier [MetLife] also shall have discretionary authority to interpret the terms of the Program and to determine eligibility for and entitlement to Program benefits in accordance with the terms of the Program.  Any interpretation or determination made by … the Carrier [MetLife], pursuant to such discretionary authority, shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Filing No. 95-6 at 168-69.)

6

In support of its decision to deny benefits, MetLife argues that the provision from the 1992 GM Plan, upon which Mr. Sumpter bases his claim for payment, was eliminated on January 1, 1994 and was not replaced by a similar provision in the 2000 Delphi Plan, which was in effect when Mr. Sumpter made his claim. ([Filing No. 95-2 at 5](#); [Filing No. 95-6 at 3](#), 152.) Because Mr. Sumpter cannot base an ERISA claim for benefits on a superseded plan, the Court is, therefore, persuaded that MetLife's decision to deny disability life insurance payments was neither arbitrary nor capricious. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir. 2006).

Potentially recognizing this issue, Mr. Sumpter asserts that he only received the 1992 GM Plan and SPD; and, therefore, argues that the 1992 GM Plan is the governing document because the 1992 GM Plan conflicts with the subsequent 2000 Delphi Plan. However, while it is true that a SPD controls if there is a direct conflict between the underlying plan documents and a SPD, *see, e.g.*, *Mers v. Marriott Int'l Grp. Acc. Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998), this only applies to the SPD *in effect* at the time the plaintiff becomes entitled to benefits. *Hooven*, 465 F.3d at 577-78. As already pointed out, the 2000 Delphi Plan was in effect at the time of Mr. Sumpter's claim for benefits. ([Filing No. 95-6 at 3](#), 152.) Therefore, even if Mr. Sumpter could prove such a conflict exists, the conflict is irrelevant to the Court's review.

Consequently, because the disability life insurance benefit was not in the 2000 Delphi Plan when Mr. Sumpter became disabled, the Court cannot conclude that MetLife's decision to deny benefits for that reason was arbitrary or capricious. As a result, MetLife is entitled to summary judgment on this claim.

**B.**     **Breach of Fiduciary Duty**

Mr. Sumpter's remaining claims all assert breaches of fiduciary duties by MetLife. A claim for breach of fiduciary duty under ERISA requires proof that: (1) the defendant is a plan fiduciary;

(2) the defendant breached its fiduciary duty; and (3) the breach caused harm to the plaintiff. *Killian v. Concert Health Plan*, 742 F.3d 651, 658 (7th Cir. 2013).

MetLife contends that Mr. Sumpter is barred from pursuing his breach of duty claims since he also seeks judicial review of MetLife's decision to deny benefits payments. *See, e.g.*, *Karr v. Dow Agrosciences LLC*, No. 1:10-cv-00975-LJM-TAB, 2012 WL 1365438, at *8 (S.D. Ind. Apr. 19, 2012) (noting that a plaintiff cannot seek the same relief under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(a)(1)(B)); *Variety Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief").

However, while Mr. Sumpter does appear to impermissibly request payment of disability life insurance payments as part of his requested relief under his breach of duty claims, *see* Filing No. 75 at 5-7, Mr. Sumpter also seeks unique relief that is specific to the breach of duty claims. Accordingly, giving Mr. Sumpter the benefit of the doubt, the Court will consider the unique relief requested in Mr. Sumpter's breach of duty claims rather than consider the claims to be barred for seeking duplicative relief.

### 1. Distribution of Plan Documents

First, Mr. Sumpter argues that MetLife breached its fiduciary duty by not distributing updated Plan documents to him and other Delphi employees. Pursuant to 29 U.S.C. § 1024(b), the administrator of a plan has an obligation to produce certain documents to a plan participant. However, only the plan administrator has a duty to produce; and only the plan administrator can be held liable for failing to provide plan documents. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793-94 (7th Cir. 2009); *see also Schorsch v. Reliance Std. Life Ins. Co.*, 693 F.3d 734, 742 (7th Cir. 2012) ("the plan administrator had the responsibility of providing [the plaintiff] with

a summary plan description, and we will not impute its apparent and unfortunate failing to [the claims administrator]"); *Karr*, 2012 WL 1365438, at *9 ("only the plan administrator can be held liable for failure to provide requested documents"). The term "administrator" is defined in 29 U.S.C. § 1002(16)(A)(i) as "the person specifically so designated by the terms of the instrument under which the plan is operated".

In this case Delphi, and not MetLife, is the plan administrator. In particular, the 2000 Delphi Plan states that "Delphi … is the sponsoring employer and administrator of the employee benefit plans described in this booklet which are governed by ERISA." (Filing No. 95-6 at 133.) Further, Mr. Sumpter previously sought leave "to correct . . . the inadvertent error of alleging that MetLife was the plan administrator instead of [GM]". (Filing No. 88 at 1.) Therefore, because MetLife is not the plan administrator, MetLife cannot be held liable for Delphi's alleged failure to provide plan documents. Accordingly, MetLife is also entitled to summary judgment on this claim.

### 2. **Delayed Appeal Decision**

Second, Mr. Sumpter argues that MetLife breached its fiduciary duty by taking longer than 45 days to respond to a request for review of an adverse disability benefits decision. Mr. Sumpter asserts that it took MetLife 74 days to respond to his appeal. Mr. Sumpter is correct that, under 29 C.F.R. § 2560.503-1(i)(3), a claims administrator is allowed a maximum of 45 days to respond to a request for review of an adverse disability benefits decision.

However, there is considerable authority to suggest that the only relief that Mr. Sumpter is entitled to because of a benefits administrator's failure to follow claims procedures is for Mr. Sumpter to be "deemed to have exhausted the administrative remedies" and to be permitted to seek "immediate access to judicial review", "on the basis that the plan has failed to provide a reasonable

9

claims procedure that would yield a decision on the merits of the claim". 29 C.F.R. § 2560.503-1(l); *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 614 (2013) ("the penalty for failure to meet those deadlines is immediate access to judicial review for the participant"); *Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, Cause No. 1:13-CV-89, 2013 WL 5230240, at *3 (N.D. Ind. Sept. 16, 2013). As evidenced by the filing of this case, Mr. Sumpter has sought judicial review of MetLife's denial of benefits, albeit unsuccessfully.

Further, even if Mr. Sumpter could somehow establish that he was entitled to monetary relief for this alleged violation, he has failed to show that MetLife's alleged failure to timely respond to his request for appellate review caused him any harm. Although Mr. Sumpter alleges that he is entitled to $20,000.00 in "equitable" relief based on "a loss of well-being resulting from the stress and anxiety caused by [MetLife's] delay", Mr. Sumpter makes no effort to substantiate the alleged harm with any evidence. (Filing No. 110 at 36-37, 39.) As such, Mr. Sumpter cannot factually establish that he was actually harmed by the delay. Accordingly, MetLife is entitled to summary judgment on this claim as well.

   3.   **Payment of Medical Expenses**

Third, Mr. Sumpter argues that MetLife breached its fiduciary duty by requiring him to pay his treating physician to complete the disability section of a claim form. For this alleged violation, instead of seeking reimbursement, Mr. Sumpter seeks $30,000.00 to "avoid the perverse incentive for fiduciaries to improperly force beneficiaries [sic] pay the cost of having forms completed, with the only potential penalty being the possibility of having to reimburse the costs". (Filing No. 110 at 40-41.)

In this regard, Mr. Sumpter raises an interesting question: whether having to pay a private physician to complete an application form violates 29 C.F.R. § 2560.503-1(b)(3), a regulation

which prohibits claims procedures that "unduly inhibit[] or hamper[] the initiation or processing of claims of benefits" such as "a provision or practice that requires payment of a fee or cost as a condition to making a claim or to appealing an adverse benefit determination". However, Mr. Sumpter provides no law in support of this unique interpretation of the regulation.

Further, even assuming that Mr. Sumpter could establish a violation of this regulation, similar to the previous breach of duty claim, the only relief available to Mr. Sumpter is to seek immediate judicial review of the claims administrator's denial of benefits. 29 C.F.R. § 2560.503-1(l). Having pursued judicial review of MetLife's denial of benefits, MetLife is also entitled to summary judgment on this claim.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** MetLife's Motion for Summary Judgment (Filing No. 95) and **DENIES** Mr. Sumpter's Motion for Summary Judgment (Filing No. 109). The Court will enter final judgment by separate order.

**SO ORDERED.**

Date: 3/31/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

James B. Sumpter
21169 Westbay Circle
Noblesville, Indiana  46062

Douglas Dormire Powers
BECKMAN LAWSON LLP
dpowers@beckmanlawson.com

Angela Emmerling Boufford
BUTZEL LONG, P.C.
boufford@butzel.com

Cynthia J. Haffey
BUTZEL LONG, P.C.
haffey@butzel.com